```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
                                                                 :
MARC J. ELKOWITZ, M.D., P.C.,                                    :
                                                                 :
                              Plaintiff,                         :      REPORT
                                                                 :      AND RECOMMENDATION
                  -against-                                      :
                                                                 :      17-CV-04663 (DLI)(PK)
                                                                 :
UNITEDHEALTHCARE OF NEW YORK,                                    :
INC.,                                                            :
                                                                 :
                              Defendant.                         :
---------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

Marc J. Elkowitz, M.D., P.C. ("Elkowitz" or "Plaintiff") brought this action against UnitedHealthcare of New York, Inc. ("UnitedHealthcare" or "Defendant") seeking to recover health plan payments for services rendered by Plaintiff to patients insured by Defendant. (*See* "First Am. Compl.," Dkt. 32.) Before the undersigned on referral from the Honorable Dora Irizarry is Plaintiff's motion for leave to file a second amended complaint against Defendant pursuant to Fed. R. Civ. P. 15(a), naming Oxford Health Plans (NY), Inc. and Oxford Health Insurance, Inc. (collectively, the "Oxford Parties") as additional defendants. (The "Motion," Dkt. 72.) For the reasons stated below, the undersigned respectfully recommends that the Motion be denied.

## BACKGROUND

Plaintiff, a professional corporation of hand, plastic, and reconstructive surgery physicians, commenced this action against Defendant in the Supreme Court of the State of New York on May 5, 2016, related to alleged underpayments for emergency health care services rendered between January 1, 2012 and December 27, 2012 to certain participants in health benefits plans for which Defendant serves as the claims administrator. (*See* Summons and Complaint, Ex. A to the Notice of Removal at 8-14 (ECF pagination), Dkt. 1-1.) On August 9, 2017, the case was removed to the Eastern District

1

of New York based on preemption of some or all of Plaintiff's claims by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and supplemental jurisdiction over the remaining state law claims.  (Notice of Removal at ¶¶ 7-8, Dkt. 1.)

The parties agreed to a scheduling order, which the Court entered, that included a February 28, 2018 deadline for the commencement of motion practice to amend pleadings.  (*See* Initial Conference Order and Proposed Scheduling Order at 2 (ECF pagination), Dkt. 10 (proposing a February 28, 2018 deadline for "commencement of motion practice for joinder of additional parties or amendment of pleadings"); Joint Letter, Dkt. 11 (requesting the modification of certain deadlines, but leaving in place the February 28, 2018 deadline for the commencement of motion practice to amend pleadings); Order dated Nov. 28, 2017.)

On March 29, 2018, the case was referred to mediation, but the parties reported that they were unable to resolve the matter.

On November 9, 2018, Plaintiff, with the consent of Defendant, filed a First Amended Complaint, adding healthcare claims to cover dates of service between January 1, 2012 and March 31, 2015, as well as additional ERISA causes of action and a breach of contract claim.  (*See* First Am. Compl.; Joint Letter Regarding Amended Complaint, Dkt. 31.)  The First Amended Complaint alleges two causes of action under ERISA (failure to abide by terms of plan in violation of Section 502(a)(1)(B) of ERISA and breach of fiduciary duty in violation of Section 502(a)(3) of ERISA), as well as six state law causes of action (three for breach of contract and others for unjust enrichment, quantum meruit, and account stated).  (*See* First Am. Compl. ¶¶10-93.)

On February 8, 2019, Defendant moved to dismiss the First Amended Complaint.  (*See* Motion to Dismiss, Dkt. 38.)  In its motion to dismiss, Defendant stated that "75 of the 200 patients whose claims are at issue are not Members of health plans that are or were administered and/or insured by United. Instead…they appear to be members of plans that are insured and/or administered by other

2

legal entities not named in this lawsuit, including Oxford Health Insurance, Inc. and Oxford Health Plans (NY), Inc."). (Def. Mem. in Support of Motion to Dismiss at 11, Dkt. 38-76.) Defendant attached to the motion to dismiss two lists of healthcare claims at issue which Plaintiff's counsel had produced on December 1, 2017 and October 5, 2018. (Declaration of Michael Bernstein ("Bernstein Decl.") ¶ 3, Dkt. 38-72; Declaration of Matthew P. Mazzola ("Mazzola Decl.") ¶ 3, Dkt. 78.) One included claims with dates of service in 2012 ("2012 List," Ex. A to the Bernstein Decl., Dkt. 38-73), and the other included claims with dates of service from 2013 through March 31, 2015 ("2013-2015 List," Ex. B to the Bernstein Decl., Dkt. 38-74). Each list identifies the "DOS" (presumably, "date of service"), patient, amount billed, amount paid, and balance owed/remaining. (*See* 2012 List, 2013-2015 List.) The 2012 List groups the claims under the headings "Oxf.," "UHC," and "Empire Plan." (*Id.*) The motion to dismiss was denied in its entirety on March 21, 2021. (*See* Memorandum & Order, Dkt. 50.)

On July 20, 2021, Defendant filed an answer to the First Amended Complaint. (Dkt. 56.)

A new scheduling order was entered on August 2, 2021, which contained the original February 28, 2018 deadline to amend the proceedings. (Dkt. 58.) The parties participated in a settlement conference but were unable to reach an agreement. (Minute Entry dated Dec. 8, 2021.)

On December 17, 2021, counsel for Defendant sent an email to counsel for Plaintiff stating that certain of the healthcare claims at issue were not submitted to UnitedHealthcare and attaching a list of claims that were not covered by UnitedHealthcare (the attachment was not included with the submission filed with the Court). (Dec. 17, 2021 Email, Ex. C to the Mazzola Decl., Dkt. 78-3.)

In an email exchange dated March 16, 2022, Plaintiff's counsel asked for a response on "whether United/Oxford would mediate the Oxford claims," to which Defendant's counsel responded "[a]s to the Oxford mediation question, I will file [sic] up with my client." (*See* Declaration of Thomas Noonan ("Noonan Decl.") ¶ 3, Dkt. 83-1; Mar. 16, 2022 Emails, Ex. A to the Noonan

3

Decl., Dkt. 83-1.)  Also on March 16, 2022, Plaintiff emailed Defendant a proposed modification to the scheduling order to extend the time to amend the complaint.  (Ex. D to the Mazzola Decl. at 1-2 (ECF pagination), Dkt. 78-4.)  Defendant did not consent.  (*Id.*)  Plaintiff did not request that the Court extend the time to amend the complaint.

On July 6, 2022, Plaintiff's counsel sent another email to Defendant's counsel asking if he had been able to discuss with his client whether it "would agree to include the Oxford claims in settlement talks."  (July 6, 2022 Emails, Ex. B to the Noonan Decl., Dkt. 83-1.)  Defendant's counsel responded, "Since the Oxford claims are not part of this lawsuit, my client does not want to include them in any claims summit."  (*Id.*)

On August 2, 2022, Plaintiff filed the Motion, seeking to add the Oxford Parties as defendants.  On August 3, 2022, the Motion was referred to the undersigned.  On August 26, 2022, Defendant filed a Memorandum in Opposition to the Motion and related submissions.  (Mazzola Decl., Dkt. 78; "Def. Opp.", Dkt. 79.)  On September 16, 2022, Plaintiff filed a Reply in support of the Motion.  ("Pl. Reply," Dkt. 83.)

## DISCUSSION

**I.   Legal Standard for Motion to Amend Complaint**

Requests to amend the complaint are generally governed by Rule 15 of the Federal Rules of Civil Procedure, which provides that once the period to amend as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15 states that "the court should freely give leave when justice so requires."  *Id.*; *see, e.g.*, *Pinyuk v. CBE Grp., Inc.*, No. 17-cv-5753 (RRM)(CLP), 2019 WL 1900985, at *2 (E.D.N.Y. Apr. 29, 2019) ("Rule 15 expresses a strong presumption in favor of allowing

4

amendment").[1]  Leave to amend may be denied only "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Pinyuk*, 2019 WL 1900985 at *2 (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  The opposing party bears the burden of showing good reason to deny amendment.  *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  The determination of whether to grant or deny leave to amend "is within the sound discretion of the district court." *McCarthy*, 482 F.3d at 200.

When a party seeks to amend after the deadline in a scheduling order has passed, Rule 15's liberal pleading standard must be balanced against Rule 16, which states that scheduling orders "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b); *see Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000).  A district court may "deny[] leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker*, 204 F.3d at 340.

## II. Analysis

Plaintiff seeks to add the Oxford Parties as defendants "to fully adjudicate" all the claims related to alleged underpayments for healthcare services.  (Motion at 3.)

Defendant argues that the Motion should be denied because it is untimely and Plaintiff has not demonstrated good cause for permitting it.  (Def. Opp. at 3.)  Defendant also argues that the Motion should be denied as futile because the causes of action against the Oxford Parties are barred by their respective statutes of limitations and the relation back doctrine does not apply.  (Def. Opp. at 7-11.)  I address each argument in turn.

---

[1] Because the Motion seeks to add a new party, it is also governed by Rule 21, which provides that the court may at any time, on just terms, add or drop a party.  "[T]he same standard of liberality applies under" Rule 21 as under Rule 15.  *Puchalski v. FM Constr., Inc.*, No. 18-cv-1596 (SJB), 2020 WL 6727777, at *9 n.10 (E.D.N.Y. Nov. 16, 2020) (quoting *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96–97 (S.D.N.Y. 2010)) (quotations omitted, alteration in original).

### A. *Undue Delay*

    **1. Legal Standard**

Under Rule 15 alone, "a court has discretion to deny leave to amend where the motion is made 'after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery.'" *State Farm Ins. Companies v. Kop-Coat, Inc.*, 183 F. App'x 36, 37-38 (2d Cir. 2006) (quoting *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000)). Delay alone "usually does not warrant denial of leave to amend" without an additional reason, such as prejudice to the opposing party, but "'the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" *Id.* at 38 (quoting *Block v. First Blood Assocs.*, 988 F.2d at 350).

Delay becomes "more significant," however, after the deadline for amending the pleadings set in the Court's scheduling order has passed. *One Step Up Ltd. v. Empire Apparel LLC*, No. 21-CV-5392 (PAC) (RWL), 2022 WL 1446553, at *2 (S.D.N.Y. Apr. 13, 2022), *report and recommendation adopted*, No. 21-CV-5392 (PAC) (RWL), 2022 WL 4124943 (S.D.N.Y. Sept. 9, 2022). When the deadline for amending the pleadings has passed, the moving party must demonstrate good cause under Rule 16. "[A] finding of 'good cause' depends on the diligence of the moving party." *Parker*, 204 F.3d at 340. "A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline." *Guity v. Uniondale Union Free Sch. Dist.*, No. CV 12-1482 (SJF) (AKT), 2014 WL 795576, at *4 (E.D.N.Y. Feb. 27, 2014).

Diligence "is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."

6

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). "In gauging prejudice," a court considers, "among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344 at 350).

2. **Analysis**

Plaintiff filed the Motion on August 2, 2022, almost four and a half years after the February 28, 2018 deadline to amend the pleadings. As a result, the good cause requirement of Rule 16 applies, and Plaintiff must demonstrate that it acted diligently in seeking leave to amend.

Plaintiff was, or should have been, aware that some of the healthcare claims at issue were administered by "Oxford" as early as December 1, 2017, when it produced a list of claims to Defendant that included claims under the headings "Oxf," "UHC," and "Empire Plan." (Dec. 17, 2021 Email; 2012 List.) Thus, about three months prior to the deadline to amend the complaint, Plaintiff was already on notice that its claims may have involved the parties it now seeks to add in the proposed amendments. Plaintiff did not act diligently when it failed to move to amend in advance of the deadline, based on information it knew before that date.

Even allowing for some ambiguity with regard to the "Oxf." descriptor in the 2012 List that Plaintiff itself produced, Plaintiff was certainly on notice by February 8, 2019, when Defendant filed the Motion to Dismiss and stated explicitly that "other legal entities not named in this lawsuit, including Oxford Health Insurance, Inc. and Oxford Health Plans (NY), Inc." (*i.e.*, the Oxford Parties), insured or administered plans covering some of the claims. (Def. Mem. in Support of Motion to Dismiss at 11.) Nevertheless, Plaintiff did not file the Motion until August 2, 2022.

Plaintiff offers several explanations for the delay. It contends that Defendant "first raised the Oxford issue in its motion to dismiss" on February 8, 2019, but the motion was not decided until

7

March 21, 2021. (Motion at 3.) Plaintiff also notes that the COVID pandemic began in 2020. (*Id.*)

Plaintiff does not explain why it could not move to add the Oxford Parties as defendants while the motion to dismiss was pending, or what effect the onset of the COVID pandemic had on its ability to seek leave to amend the complaint. Even calculating from the date the motion to dismiss was decided, Plaintiff delayed almost 17 months before filing the Motion. Courts in this Circuit have denied motions to amend made after similar and lesser delays from the time the moving party learned of the information supporting the proposed amendments. *See, e.g., U.S. Small Bus. Admin. v. Feinsod*, No. 17-CV-3586 (JS) (SIL), 2021 WL 707079, at *6 (E.D.N.Y. Feb. 4, 2021), *report and recommendation adopted*, No. 17-CV-3586 (JS) (SIL), 2021 WL 695123 (E.D.N.Y. Feb. 23, 2021) (discussing denial of a motion to amend where "plaintiff 'knew or should have known' the facts underlying the proposed amendment at least a year before it sought leave to file" the motion) (citing *Pkfinans Int'l Corp. v. IBJ Schroeder Leasing Corp.*, No. 93-CIV-5375 (SAS), 1996 WL 84481, at *2 (S.D.N.Y. Feb. 27, 1996)); *Amusement Indus., Inc. v. Stern*, No. 07-CIV-11586 (LAK), 2014 WL 4460393, at *11 (S.D.N.Y. Sept. 11, 2014) (denying motion to amend made about 18 months after the moving party learned of the information underlying the proposed amendment and "delay…was to some extent unjustified").

Plaintiff argues that there is good cause to amend the complaint despite its delay due to its belief that any dispute regarding claims administered by the Oxford Parties would be resolved in settlement discussions. Plaintiff "presumed that naming Oxford was not needed to resolve the Oxford claims based on Defendant's conduct in assuming responsibility for the Oxford claims in 2017 and then considering the inclusion of the Oxford claims in the 2022 settlement efforts." (Pl. Reply at 3.) Plaintiff states that in July 2018, "the parties agreed to court annexed mediation…in connection to those claims, which included United and Oxford claims" (Motion at 1), that during a settlement conference held in December 2021, "Plaintiff requested Defendant include the Oxford claims in settlement, to which Defendant recently responded directly that it would only consider the United

8

claims" (*Id.* at 2), and that in July 2022 Defendant "definitively pushed back on" including claims administered by the Oxford Parties in a settlement. (*Id.* at 3.)

While Plaintiff has demonstrated that it wanted to resolve all the benefits claims with Defendant without the need to add other defendants, it has also shown that Defendant never agreed to do so. There is no indication that Defendant ever represented that it would assume legal responsibility for the Oxford Parties' claims. Plaintiff's persistence over the years in renewing in its requests that Defendant acquiesce in resolving the Oxford Parties' claims demonstrates Plaintiff's capacity for hope; it does not absolve it of its legal obligation to act diligently. Nothing prevented Plaintiff from amending the complaint to include the Oxford Parties while engaging in settlement discussions.

Thus, Plaintiff does not describe any circumstances that justify its delay of more than four years in seeking leave to add the Oxford Parties.

Permitting the proposed amendments at this point would prejudice Defendant. As Defendant argues, amending the complaint over six years after the commencement of the action to add the Oxford Parties would significantly delay resolution of the case. Additional time would be required for service of process on the new defendants, the Oxford Parties' response, a potential new motion to dismiss, and discovery by the Oxford Parties for the healthcare claims it administered.

Accordingly, I find that Plaintiff has unduly delayed in requesting leave to amend the complaint and has not demonstrated good cause under Rule 16 to permit amendment.

### B. *Futility*

#### 1. **Legal Standard**

A motion to amend may be denied if the proposed amendment is futile. *Parker*, 204 F.3d at 339. A complaint is not futile when it is "sufficient to withstand a motion to dismiss under Rule 12(b)(6)." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d at 244; *see also IBEW Local Union No. 58 Pension*

*Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) ("[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss.") The Court must accept all allegations in the proposed amended complaint as true and draw all inferences in Plaintiff's favor to determine whether it states a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A proposed amendment is futile if it is barred by the applicable statute of limitations. If an amendment to the pleadings "changes the party or the naming of the party against whom a claim is asserted" and the statute of limitations has run on the claim, the amendment must relate back to the date of the original pleading in order to proceed. Fed. R. Civ. P. 15(c). The amendment relates back when:

>   **(A)** the law that provides the applicable statute of limitations allows relation back;
>
>   **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
>   **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> >   **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> >   **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Put another way, all of the following conditions must be met in order for an amended complaint adding a new party to relate back to the date of the original complaint:

>   (1) the claim must have arisen out of conduct set forth in the original pleading;
>
>   (2) within 90 days of the filing of the original complaint, the party to be added must have received notice such that it will not be prejudiced in defending the case; and
>
>   (3) within 90 days of the filing of the original complaint, the party to be added knew or should have known that, but for a mistake of identity, the original action would

10

have been brought against it.

*See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); Fed. R. Civ. P. 4(m).

Notice to the new party under Rule 15(c)(1)(C)(i) may be actual or constructive. When "two defendants are so 'closely related in their business activities or linked in their corporate structure' as to have an 'identity of interest'…'the institution of an action against one party will constitute imputed notice' to the related party." *Hahn v. Off. & Pro. Emps. Int'l Union*, AFL-CIO, 107 F. Supp. 3d 379, 384 (S.D.N.Y. 2015) (citing *In re Allbrand Appliance & Television Co.*, Inc., 875 F.2d 1021, 1025 (2d Cir. 1989)). In order for there to be an identity of interest, there must be "substantial structural and corporate identity, such as shared organizers, officers, directors, and offices." *In re Allbrand Appliance & Television Co.*, Inc., 875 F.2d at 1025. A parent-subsidiary relationship is "insufficient even when combined with shared counsel" to create an identity of interest. *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 131 n.4 (E.D.N.Y. 2014).

The question of whether the party to be added "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," under Rule 15(c)(1)(C)(ii), focuses on "what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (emphasis in original). The Rule is intended to balance the prospective defendant's "strong interest in repose" with the possibility that the plaintiff "has made a mistake of identity about which that [prospective defendant] should have been aware," *id.* at 550, and to address "the situation where a plaintiff has sued the wrong party and the right party, reasonably aware of the error, sits on the sidelines while the statute of limitations runs out." *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d at 130.

In addition, Rule 15(c)(1)(A) permits relation back where the "law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). Courts in the Second Circuit

11

apply state relation-back law to all claims where a state law provides the statute of limitations and the federal standard is less permissive. *Hogan v. Fischer*, 738 F.3d at 518.

### 2. <u>Analysis</u>

Defendant argues that the proposed amendment to the complaint would be futile because Plaintiff's causes of actions against the Oxford Parties are barred by the applicable statutes of limitations and the relation back doctrine does not apply. (Def. Opp. at 7-12.)

The parties do not dispute that, absent relation back, the claims against the Oxford Parties would be barred by the applicable statutes of limitations. Defendant states, and Plaintiff does not dispute, that "Plaintiff's proposed new causes of action against Oxford accrued in 2015 and expired, at the latest, on January 1, 2022." (Def. Opp. at 8.)[2] Plaintiff states that "the 'relation back' doctrine…should apply to avoid [statute of limitation] concerns." (Motion at 3.)

Plaintiff states that although it did not serve the Complaint or Amended Complaint on the Oxford Parties, "Plaintiff's timely service of Defendant provided notice to Oxford as demonstrated by Defendant's conduct in assuming Oxford claims in the parties' 2017 mediation and Defendant's consideration of continuing to include Oxford claims in 2022 settlement efforts." (Pl. Reply at 5.) It argues that the Oxford Parties "should have" received actual notice of the action "at or before the first mediation session in July, 2018 as the parties mediated the claims at issue at that point, which

---

[2] Plaintiff's cause of action for breach of fiduciary duty in violation of Section 502(a)(3) of ERISA is governed by a three-year statute of limitations. 29 U.S.C. § 1113. Because ERISA does not contain a statute of limitations for claims based on denial of benefits, courts in the Second Circuit determine the applicable statute of limitations by looking to the most analogous state cause of action. *Guilbert v. Gardner*, 480 F.3d 140, 148-149 (2d Cir. 2007). In New York, it would be a contracts action, and thus governed by N.Y. C.P.L.R. § 213, which contains a six-year statute of limitations. *Ivanovic v. IBM Pers. Pension Plan*, 47 F. Supp. 3d 163, 165 (E.D.N.Y. 2014), *aff'd*, 620 F. App'x 64 (2d Cir. 2015) (citing *Miles v. New York State Teamsters Conf. Pension & Ret. Fund Emp. Pension Ben. Plan*, 698 F.2d 593, 598 (2d Cir. 1983)). This six-year statute of limitations also governs Plaintiff's state law claims for breach of contract, quantum meruit, and accounts stated. *See* N.Y. C.P.L.R. 213(2); *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 722 (S.D.N.Y. 1986); *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 615 N.E.2d 985 (1993). Plaintiff's state law claim for unjust enrichment has a three-year statute of limitations. *See Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013) (citing *Ingrami v. Rovner*, 45 A.D.3d 806, 808, 847 N.Y.S.2d 132 (2007)).

included Oxford claims," and, in the alternative, the Oxford Parties had constructive notice through their "shared identity" with UnitedHealthcare. (Motion at 4.)

There is no evidence that the Oxford Parties received actual notice of the action, and certainly not by August 6, 2016, 90 days after the original complaint was filed. *See* Fed. R. Civ. P. 15(c)(1)(C)(i). Plaintiff asks the Court to infer that Defendant provided notice to the Oxford Parties because Defendant "assum[ed] Oxford claims in the parties' 2017 mediation" and considered including those claims in settlement efforts in 2022. (Pl. Reply at 5.) However, these actions do not constitute evidence that the Oxford Parties actually received timely notice of Plaintiff's lawsuit. Plaintiff did not provide such notice to the Oxford Parties, and it cannot presume that Defendant did, would or should have given notice to the Oxford Parties. Even if Defendant had notified the Oxford Parties of the action during the mediation and settlement discussions in 2017, 2018, or 2022, as Plaintiff seems to argue, such notice would not have been received by the Oxford Parties "within the period provided by Rule 4(m)," as required by Rule 15(c)(1)(C).

Alternatively, Plaintiff argues that notice should be imputed to the Oxford Parties because they and UnitedHealthcare are so closely related that they share an identity of interest. (Motion at 4-5.) Plaintiff submitted various materials demonstrating that in 2004, UnitedHealthcare and Oxford Health Plans, Inc. completed a merger that led to Oxford Health Plans, Inc. becoming a wholly-owned subsidiary of UnitedHealthcare. (*See* Ex. C to the Motion.) Plaintiff also submitted a health insurance card on which the names "UnitedHealthcare" and "Oxford" both appear (*see* Ex. A to the Motion), and a printout of a webpage Plaintiff identifies as "https://oxhp.com/," which states that "[t]he Oxford website previously at this address is no longer available" and provides links to what Plaintiff states are "United's websites." (Motion at 4-5; *see* Ex. B to the Motion.)

As Defendant points out, Oxford Health Plans, Inc. is a separate entity from the parties Plaintiff seeks to add, *i.e.,* Oxford Health Plans (NY), Inc. and Oxford Health Insurance, Inc. (Def.

13

Opp. at 11.) Therefore, any merger with that entity would have no bearing on whether the Oxford Parties and UnitedHealthcare shared an identity in interest. Even if Oxford Health Plans, Inc. were one of the Oxford Parties, a parent-subsidiary relationship is "insufficient even when combined with shared counsel" to create an identity of interest. *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d at 131 n.4.

Aside from showing a parent-subsidiary relationship between UnitedHealthcare and *an* Oxford entity, Plaintiff submitted no evidence to demonstrate that the Oxford Parties and UnitedHealthcare share substantial structural and corporate identity. It also does not allege that the Oxford Parties and Defendant share organizers, officers, directors, or offices. Contrary to Plaintiff's assertions, UnitedHealthcare's conduct in considering including Oxford healthcare claims in settlement discussions does not create an identity of interest, and in any event, occurred outside the 90-day period required by Rule 5(c)(1)(C).

Because the Oxford Parties did not receive timely notice of the action, either actual or constructive, the requirements for Rule 15(c)(1)(C) have not been met, and the proposed amendment adding them as parties do not relate back to the date of the original complaint. *C.f. Krupski v. Costa Crociere S. p. A.*, 560 U.S. at 554-57 (finding that there was relation back because new defendant should have known, but for plaintiff's mistake, it would have been named in the action, only after the District Court had determined that the new defendant had "constructive notice" of the original complaint within the Rule 4(m) period).

Plaintiff also argues that there is relation back because at the time it filed the original complaint, it "mistakenly believed that Defendant was the proper payor of the applicable healthcare insurance policies" insured or administered by the Oxford Parties (Motion at 1) and that the Oxford Parties "either knew or should have known about this lawsuit based on Defendant taking responsibility for Oxford's claims in the 2017 mediation as either Defendant notified Oxford and/or acted on Oxford's

14

behalf." (Pl. Reply at 5.) However, unless the Oxford Parties received actual or constructive notice of the action, relation back under Rule 15(c)(1)(C) does not apply. In any event, Plaintiff does not show that the Oxford Parties actually knew or explain how they should have known, within the required time period, that the action would have been brought against them but for Plaintiff's alleged mistake.

I also examine whether, in the alternative, New York law permits relation back for Plaintiff's state law claims. Under New York law, claims against a new defendant relate back when:

> (1) both claims arose out of the same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that [it] will not be prejudiced in maintaining [its] defense on the merits and (3) the new party knew or should have known that, but for [a] mistake by plaintiff as to the identity of the proper parties, the action would have been brought against [it] as well.

*Girau v. Europower, Inc.*, 317 F.R.D. 414, 424 (S.D.N.Y. 2016) (alterations added) (citing *Buran v. Coupal*, 87 N.Y.2d 173, 178-179, 661 N.E.2d 978 (1995)); *see* N.Y. C.P.L.R. § 203.

The test for New York's relation back rule was "patterned largely after the Federal relation back rule." *Buran v. Coupal*, 661 N.E.2d at 982; *see also Girau*, 317 F.R.D. at 424 (the third prong of the New York test is analyzed under the same standard as Rule 15(c)(1)(C)(ii)); *Fisher v. Cnty. of Nassau*, No. 10-CV-0677 (JS) (ETB), 2011 WL 4899920, at *5 (E.D.N.Y. Oct. 13, 2011) (same). As discussed *supra*, the Oxford Parties did not receive either actual or constructive knowledge of the suit within the applicable time for service. Therefore, New York's rule for relation back is also not met. *See Fisher,* 2011 WL 4899920 at *4-5 (finding no relation back where the prospective defendant "did not have either actual or constructive knowledge of the suit" within 120 days of plaintiff filing the complaint, the applicable time for service under Federal Rule of Civil Procedure 4(m) prior to its 2015 amendment).

Because Plaintiff has not satisfied the requirements for either the federal or state tests, there is no relation back, and Plaintiff's amendments to add the Oxford Parties are barred by the applicable

15

statutes of limitations. Accordingly, I find that Plaintiff's proposed amendments are futile and should not be permitted.

## CONCLUSION

I respectfully recommend that the Motion be denied because Plaintiff has unduly delayed in requesting leave to amend the complaint and has not demonstrated good cause under Rule 16. Alternatively, I respectfully recommend that the Motion be denied because the proposed amendments are barred by the statutes of limitation and are, therefore, futile.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

SO ORDERED:

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   March 29, 2023
         Brooklyn, New York